IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MATTHEW DEVERE WARFIELD,  Petitioner, | § § § | |
| V. | § § | A-18-CV-00479-RP |
| LORIE DAVIS,  Respondent. | § § § | |

## ORDER

Petitioner Matthew Warfield is pro se in this matter and has paid the full filing fee for this case. Before the Court are Petitioner's Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 and Memorandum in Support (ECF No. 1), his supplemental memorandum and exhibits (ECF No. 5), Respondent's Answer (ECF No. 12), and Petitioner's Reply (ECF No. 14). Petitioner requests an evidentiary hearing. (ECF No. 5-2 at 15; ECF No. 14). For the reasons set forth below, Petitioner's Application for Writ of Habeas Corpus and his request for an evidentiary hearing are **denied**.

## STATEMENT OF THE CASE

According to Respondent, the Director has lawful custody of Petitioner pursuant to a judgment and sentence of the 274th District Court of Hays County, Texas. (ECF No. 13-23 at 55). A jury found Petitioner guilty of evading arrest or detention with a motor vehicle, aggravated assault, and tampering with physical evidence, and assessed an aggregate sentence of 40 years in prison. (*Id.*).

**A. Background**

A grand jury indictment returned December 3, 2014, charged Petitioner with evading arrest or detention with a motor vehicle (Count I), aggravated assault (Count II), tampering with physical evidence (Count III), and unlawful possession of a firearm by a felon (Count IV). (ECF No. 13-13 at 5-6). The indictment further alleged Petitioner had previously been convicted of robbery. (ECF No. 13-13 at 6).

The Third Court of Appeals summarized the facts and evidence presented at Petitioner's trial as follows:

> The instant charges arose out of a roadway encounter [on April 23, 2013,] between two drivers going northbound on Interstate 35 between San Marcos and Austin, near Kyle. Jack Drewien, driving a red truck, was driving in the left of the three highway lanes. As he began to approach an 18–wheeler truck driving in the center lane, he saw a white car in his rearview mirror. As he passed the truck, he noted his speed, 75 miles per hour, and noticed that the white car was driving very closely behind him—"not just on [his] bumper, it was nearly under [his] bumper." Drewien sped up, attempting to separate from the car, but the car remained on his bumper. He then observed the driver of the white car lean over in the car with one hand on the wheel. The car remained on his bumper so Drewien continued accelerating, approaching 85 miles an hour. He cleared the 18–wheeler, moved to the center lane, and began to slow down, giving the white car clearance to go by. The white car pulled up alongside Drewien, and, according to Drewien, pointed a gun at him. Drewien braked, and the car passed. Drewien then called 911.
>
> Officer Dago Pates, a traffic enforcement officer with the Kyle Police Department, was "clocking speeders" on Interstate 35. He clocked appellant's white Chevy Malibu travelling [sic] 83 miles per hour in a 70 mph zone and initiated a traffic stop for speeding. As he was pulling appellant over, he noticed a vehicle driving behind him flashing its lights and he requested backup. Appellant pulled his vehicle onto the shoulder of the interstate. By this time, Officer Pates had been informed by dispatch that appellant possibly had a gun. The officer drew his weapon and instructed appellant to exit the car. Appellant complied, and followed Officer Pates's subsequent instructions to move to the back of his car and then to pull his shirt up and turn in a circle to reveal whether he had a gun on his person. Officer Pates then told appellant not to move while he awaited backup. However, after about

2

> 45 seconds, appellant began drifting toward his open car door—ignoring the officer's repeated commands not to move—and got back into his car and drove off.
>
> Officer Pates pursued appellant, and a high speed chase ensued. Ultimately, four police officers were involved in the chase, which lasted approximately seven minutes and covered close to 14 miles. During the chase, appellant repeatedly changed lanes, weaved through traffic, and passed in no passing zones (both on the shoulder and against the retaining wall), all while traveling at high rates of speed—speeds exceeding 100 miles per hour and reaching up to 120 miles per hour. The chase ended when a police officer moved her patrol SUV in front of appellant and forced appellant to stop by blocking his way, slowing down in front of him, and eventually cutting him off. Appellant was then removed from the car at gunpoint. After that, the only passenger in the car, Lamonika Davis, was also removed at gunpoint. Upon being apprehended, appellant told the officers that he did not want to get pulled over because he had an open beer in the car. He said that he "ran" because Officer Pates had pointed a gun at him.
>
> After appellant and Davis were out of the car, the police officers on the scene searched for the gun Drewien reported. No gun was found on appellant, on Davis, or in appellant's car. Davis disclosed to the officers that appellant had given her the gun during the chase and told her to throw it out of the window, and she did. She was unable to recall precisely their location on the interstate when she threw it out. Subsequent efforts to locate the gun along the highway, even with Davis's assistance, were unsuccessful.
>
> ***
>
> At trial, the State presented the testimony of Lamonika Davis . . . After describing how appellant removed a handgun from under his seat and then pointed it at the driver of the red truck "right in front of [her] face," Davis testified that appellant began driving faster because "an officer started to pull us over." She said that she knew it was an officer trying to pull them over "[b]ecause of the lights and the sirens and the intercom."

*Warfield v. State*, No. 03-15-00468-CR, 2017 WL 2628563, at *1-2 (Tex. App.–Austin 2017, pet. ref'd ).

On January 21, 2015, the State noticed its intent to introduce evidence of extraneous offenses, including assault, resisting arrest, murder, criminal trespass, theft, possession of marijuana, robbery, and sexual assault. (ECF No. 13-13 at 24). On March 12, 2015, Petitioner entered into a plea agreement, agreeing to plead guilty to the charges of evading arrest and aggravated assault in return

3

for the State's agreement to dismiss the other charges and cap his sentence at a term of 15 years' imprisonment. (ECF No. 13-13 at 32-43). However, Petitioner withdrew from the plea agreement when the presentence investigation did not recommend probation. (ECF No. 1-2 at 2). On April 24, 2015, the State amended its notice of intent to introduce evidence of extraneous offenses, asserting that before he was indicted Petitioner ". . . approached Lamonika Davis and lifted up his shirt brandishing a weapon, and threatened her to not speak with the police about [the alleged crime]." (ECF No. 13-13 at 44-45).

On the first day of trial the State dismissed the charge of being a felon in possession of a firearm. (ECF No. 13-13 at 74; ECF No. 13-17 at 40). Petitioner did not testify at his trial. After deliberating for approximately 45 minutes, the jury returned a verdict of guilty on all counts. (ECF No. 13-24 at 41). Petitioner pleaded true to the alleged sentencing enhancement and testified at the punishment phase. (ECF No. 13-19 at 9, 41-85). The jury assessed Petitioner's sentences at 20 years' imprisonment on Count I, 40 years on Count II, and 15 years on Count III, which the trial court ordered be served concurrently. (ECF No. 13-19 at 122).

Petitioner appealed, complaining "about the admission of evidence, the denial of his motion for [a] mistrial, and excessive punishment resulting from an illegal sentence." *Warfield*, 2017 WL 2628563, at *1. The Third Court of Appeals overruled his claims of error and affirmed his conviction and sentence. Petitioner sought a state writ of habeas corpus, asserting he was denied the effective assistance of trial and appellate counsel. (ECF No. 13-23 at 76-88). The state habeas trial court did not conduct a hearing nor make findings of fact and "denied" relief. (ECF No. 13-24 at 40). The Texas Court of Criminal Appeals denied the writ without written order. (ECF No. 13-21).

**B. Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1. He was denied the effective assistance of trial counsel because counsel failed to investigate and pursue available defenses, failed to interview Mr. Drewien and Ms. Davis, failed to adequately prepare for trial, failed to preserve the denial of his request for a mistrial for appeal, failed to request a lesser-included offense instruction, and failed to inspect grand jury testimony.

2. He was denied the effective assistance of appellate counsel because his appellate counsel did not appeal the issue of a lesser-included offense instruction and did not assert claims of ineffective assistance of trial counsel.

**C. Exhaustion of State Court Remedies**

Respondent allows the petition is timely and not successive. (ECF No. 9 at 4). Respondent argues Petitioner's claims were not exhausted in the state courts because "his claims now rely on exhibits that he did not present before the state court." (ECF No. 12 at 6).[1] However, despite the alleged procedural default of the claims, "the Director asks the Court to deny Warfield's claims on the merits . . ." (ECF No. 12 at 9).

**ANALYSIS**

**A. The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court summarized the basic principles established by the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA") in *Harrington v. Richter*, 562 U.S. 86, 97-100 (2011). Section 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the state court's decision "was contrary to" federal law as

---

[1] Petitioner attaches documents to his federal habeas pleadings which were not provided to the state courts in his state habeas action. Review "under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Additionally, these documents contradict Petitioner's allegations of ineffective assistance. (ECF No. 1-2 at 3-4, 7-11).

clearly established by the holdings of the Supreme Court; (2) when the state court's decision involved an "unreasonable application" of such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 100 (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). Under the unreasonable application clause of § 2254(d), a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (quotation marks and citation omitted).

### B. The *Strickland* Standard

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on an ineffective assistance of counsel claim, the petitioner must establish counsel's performance was deficient and the deficient performance prejudiced the defense. *Id.* at 687. A habeas petitioner has the burden to prove both prongs of the *Strickland* test. *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009); *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008). When considering a state court's application of *Strickland*, the Court's review must be "doubly deferential," to afford "both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015), *citing Yarborough v. Gentry*, 540 U.S. 1, 6 (2003).

**C. Merits**

**1. Ineffective assistance of trial counsel**

Petitioner asserts counsel failed to adequately prepare for trial because counsel failed to investigate and interview Mr. Drewien and Ms. Davis. Petitioner contends counsel failed to discover Mr. Drewien was involved in an "article 32 investigation while he was in the military," and notes Ms. Davis was a stripper. (ECF No. 5-2 at 5). Petitioner alleges that, because these witnesses' testimony was critical to the finding of guilt, had counsel interviewed them prior to trial he could have successfully impeached their credibility, resulting in an acquittal. (ECF No. 5-2 at 5-6). Petitioner also alleges counsel did not provide him with the State's discovery or discuss "any type of defenses for trial." (ECF No. 5-2 at 7).

Petitioner's trial counsel did not submit an affidavit in the state habeas proceeding and the state court did not make any findings of fact or reach any conclusions of law regarding Petitioner's claims of ineffective assistance of counsel. Accordingly, "confronted with a summary decision, a claim of unreasonable application, and no other state court opinion to look to," the Court must decide "what arguments or theories support[] or . . . could have supported[] the state court's decision," "gather[] the arguments and theories that could support the state court's ultimate decision," and "'ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent' with Supreme Court precedent." *Thomas v. Vannoy*, 898 F.3d 561, 569 (5th Cir. 2018) (quoting *Harrington*, 562 U.S. at 10), *pet. for cert. filed*, (U.S. Oct. 30, 2018) (No. 18-6550).

Petitioner does not describe information counsel failed to discover that would have resulted in an acquittal. The trial transcript reveals counsel conducted an adequate pretrial investigation, counsel had a reasonable trial strategy, and counsel thoroughly and effectively cross-examined the State's witnesses. Counsel ably cross-examined Mr. Drewien and was able to impeach his testimony based on other factors. There is no indication that Mr. Drewien's credibility could have been impeached by the 1974 incident in Korea, as it does not appear that Mr. Drewien was the subject of the article 32 hearing.[2] Counsel thoroughly cross-examined Ms. Davis, was able to preclude some damaging testimony from Ms. Davis, and the jury was aware that Ms. Davis was a dancer at a gentlemen's club. (ECF No. 13-17 at 105-06, 107-08). Additionally, prior to the defense resting, counsel questioned Petitioner outside the presence of the jury and Petitioner stated under oath that he and his counsel had discussed his trial "plenty of times," including the "pros and cons" of whether Petitioner should testify. (ECF No. 13-18 at 145).

---

[2] With regard to Petitioner's allegation that counsel failed to discover Mr. Drewien had been involved in an article 32 hearing, Mr. Drewien testified on direct examination:

> In 1974 I was in Korea. . . . I was a staff duty officer one night and I had the military police on the compound come to me. Typically, if they were going to do . . . an inspection for drugs and weapons and contraband – they had to have an officer present.
>
> The only role of the officer was to Mirandize anyone that they were going to detain. I was outside. We came to a room in the barracks. The military police proceeded to use a pass key. They opened the room. The military police went in. I heard them say, "The room is secure."
>
> The NCOIC looked at me and said, "Sir, if you will enter and read them their Miranda rights."
>
> I stepped in. No sooner than I stepped in, somebody basically bounded out of a bunk to my left and pointed a gun at me. The NCOIC along side of me shot him in the head and I couldn't hear for about a month after that. I was grounded. There was an Article 32 investigation and all the rest of that stuff.
>
> That was my experience with having a gun pointed at me. It's much closer range than this particular incident.

(ECF No. 13-17 at 68-69).

Counsel is not required to investigate when he has "reason to believe that pursuing certain investigations would be fruitless or even harmful," and when any information that might be discovered would be of only collateral significance. *Trevino v. Davis*, 829 F.3d 328, 349 (5th Cir. 2016), *cert. denied*, 138 S.Ct. 1793 (2018). Counsel's choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable." *Strickland*, 466 U.S. at 690. *See also Trottie v. Stephens*, 720 F.3d 231, 243-44 (5th Cir. 2011). Petitioner has not shown either deficient performance or prejudice with regard to counsel's pretrial investigation and preparation for trial. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (holding that, without a specific, affirmative showing of precisely what evidence or testimony was rendered unavailable due to a trial counsel's failure to investigate, the petitioner had not established *Strickland*'s prejudice requirement).

Neither has Petitioner established prejudice arising from counsel's alleged deficiencies. Given the weight of the evidence against Petitioner, including the dash cam video and the police officers' testimony, he is unable to establish counsel's alleged failures were prejudicial. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008). Because Petitioner has not shown that counsel's investigation was deficient or any resulting prejudice, the state court's denial of this claim was not unreasonable. *See Harrington*, 562 U.S. at 105 ("The *Strickland* standard is a general one, so the range of reasonable applications is substantial."); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (holding that *Strickland* is a general standard and, accordingly, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.").

Petitioner also contends counsel's performance was deficient because counsel failed to inspect the testimony presented to the grand jury. (ECF No. 5-2 at 10). The record indicates counsel was retained after the indictment was returned. In his supplemental pleading Petitioner allows his trial counsel was retained after the indictment was returned, but again asserts trial counsel failed to conduct an adequate investigation by reviewing the grand jury testimony and asserts there was an insufficient basis for the grand jury to indict because Mr. Drewien "took over two years in submitting a written statement to the police." (ECF No. 5-2 at 10). It is reasonable to presume that the grand jury was presented with the testimony of the arresting officers and Ms. Davis, and counsel thoroughly cross-examined Mr. Drewien regarding his delay in submitting a sworn statement. Absent the presentation of a "special reason," a Texas defendant "is not ordinarily entitled to the inspection of grand jury minutes or testimony for the purpose of ascertaining evidence in the hands of the prosecution, or for the purposes of discovery in general." *Garcia v. State*, 454 S.W.2d 400, 403 (Tex. Crim. App. 1970).

Petitioner does not make any argument regarding how counsel's failure to review the grand jury testimony fell below the prevailing standard of adequate representation and he makes only a conclusory allegation of any prejudice arising from this alleged failure. Counsel is not ineffective for failing to present insufficiently described, cumulative, or strategically omitted testimony. *Trottie*, 720 F.3d at 244. Conclusory allegations of prejudice are insufficient to obtain habeas relief on an ineffective assistance of counsel claim. *Mallard v. Cain*, 515 F.3d 379, 383 (5th Cir. 2008).

Petitioner asserts trial counsel's performance was deficient he failed to preserve the denial of Petitioner's request for a mistrial for appeal. (ECF No. 5-2 at 11-12). Petitioner contends counsel's performance was deficient because he did not properly move for a mistrial or limiting

10

instruction when Mr. Drewien appeared to reference the fact that Petitioner entered a guilty plea before then rescinding the plea and proceeding to trial.

When questioned about the two-year gap between the date of the incident and Mr. Drewien's filing of a statement, Mr. Drewien explained:

> I think what's been going on in this country. I think that's what it is. There have been a lot of police officers shot. There's been a lot of innocent people shot. And I think – I think that had an affect on me. I felt that it was time, so then I was told – I guess it was in March – that this case was going to the penalty phase and I –

(ECF No. 13-17 at 86). The prosecutor then halted his questioning of Mr. Drewien, and suggested to the trial court that it not give a limiting instruction at that time because it would call the jury's attention to Mr. Drewien's apparent reference to Petitioner's prior guilty plea. (*Id.*). Defense counsel then moved for a mistrial, "for the record," which was immediately denied. (ECF No. 13-17 at 86-90). Counsel argued: "I'm moving for a mistrial based on the witness talking about a penalty phase of this case, whether they could rightly infer that the defendant has already pled guilty and taken responsibility for the case." (ECF No. 13-17 at 87). Although the trial court did not grant the motion for a mistrial and no limiting instruction was requested, on the record and outside the presence of the jury Mr. Drewien acknowledged the prosecutor had instructed and reminded him "not to talk about any previous hearings where [Petitioner] pled guilty or a punishment hearing [was conducted.]" (ECF No. 13-17 at 91).

Whether to request a limiting instruction is a strategic decision because by doing so counsel calls attention to the evidence the jury might have disregarded without such an instruction. *See Kessler v. Dretke*, 137 F. App'x 710, 712 (5th Cir. 2005); *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990). Petitioner has not overcome the presumption that counsel's "failure" to request a

limiting instruction was sound trial strategy. *See Strickland*, 466 U.S. at 688-89. Petitioner is unable to establish prejudice from counsel's handling of this situation because Mr. Drewien's statement did not clearly inform the jury that Petitioner had previously pleaded guilty and counsel's motion for a mistrial properly preserved any potential error for an appeal. Furthermore, given the evidence against Petitioner, the absence of a limiting instruction likely did not affect the jury's verdict. Therefore, Petitioner has not demonstrated that this alleged error was either deficient performance or prejudicial.

Petitioner also argues counsel's performance was deficient because he failed to seek a jury instruction on the lesser-included offense of misdemeanor "deadly conduct." (ECF No. 5-2 at 12-13). The Supreme Court has "specifically command[ed] that a court must indulge the strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (internal quotation marks and brackets omitted). Counsel's decision to request a lesser-included offense instruction is the type of strategic decision which is "virtually unchallengeable" in a federal habeas action, and the Fifth Circuit Court of Appeals has recognized counsel's choice not to request an instruction is a matter of strategy and subject to reasonable debate. *See Druery v. Thaler*, 647 F.3d 535, 539-40 (5th Cir. 2011). Such a decision is properly classified as a matter of tactics and strategy because a lesser-included offense instruction may increase the chance of a conviction while foregoing it could foreclose the possibility of a complete acquittal. *Mejia v. Davis*, 906 F.3d 307, 316 (5th Cir. 2018). The record contains sufficient evidence to demonstrate that counsel's strategic decisions fell within the wide range of trial tactics that constitute reasonable assistance. *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009). Therefore, the state habeas court could reasonably conclude that counsel made an informed

choice to pursue an all-or-nothing strategy and thus the failure to seek a lesser-included offense instruction was not deficient performance. Furthermore, Petitioner is unable to show prejudice arising from counsel's alleged error. Accordingly, the state court's denial of this claim was not an unreasonable application of *Strickland*.

**2. Ineffective assistance of appellate counsel**

Petitioner asserts his appellate counsel's performance was deficient because he failed to assert ineffective assistance of trial counsel and "the lesser included offense of Deadly Conduct on appeal." (ECF No. 1 at 6). Petitioner does not discuss or argue this claim in his Memorandum of Law in Support of Petition for Writ of Habeas Corpus (ECF No. 1-1) or in his supplemental memorandum (ECF No. 5-2).

To succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show that his counsel's performance was deficient and prejudicial. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). To find deficient performance when appellate counsel filed a merits brief, a petitioner must show that "a particular nonfrivolous issue was clearly stronger than issues counsel did present." *Smith*, 528 U.S. at 288. To demonstrate prejudice the petitioner must establish a reasonable probability that, but for his counsel's unreasonable failure to assert a particular claim on appeal, he would have prevailed in the appeal. *Smith*, 528 U.S. at 286; *Moreno v. Dretke*, 450 F.3d 158, 168 (5th Cir. 2006). Appellate counsel "need not advance every argument, regardless of merit, urged by the appellant." *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).

Appellate counsel asserted four legitimate and arguable claims on appeal. Petitioner fails to show that he was denied effective assistance of appellate counsel because he does not identify a non-frivolous issue that could have been raised on appeal and upon which he would have prevailed.

13

Bald assertions are insufficient to support a claim for habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998). Furthermore, the Texas Court of Criminal Appeals has noted that, "[a]s a general rule, . . . direct-appeal litigation of ineffective assistance of counsel has too many likely pitfalls to be an adequate procedural vehicle for challenging the ineffectiveness of a trial attorney." *Griffith v. State*, 507 S.W.3d 720, 728 (Tex. Crim. App. 2016). Accordingly, the state court's denial of relief on this claim was not an unreasonable application of *Strickland* or *Smith*.

## EVIDENTIARY HEARING

Petitioner asks the Court to grant him an evidentiary hearing. Section 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
    (A) the claim relies on—
        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner has failed to plead any allegations that would entitle him to a hearing. Accordingly, Petitioner's request for an evidentiary hearing is denied.

## CONCLUSION

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claims that he received ineffective assistance of trial and appellate counsel.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right "in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Court shall not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Application for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

**SIGNED** on November 19, 2018.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE